REDACTED

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 1:15CR201 |
| | ) | |
| | ) | Count 1: 18 U.S.C. § 371 |
| v. | ) | (Conspiracy to Commit Bribery |
| | ) | and to Defraud the United States) |
| | ) | |
| EDWIN STUART LIVINGSTON III, | ) | Count 2: 18 U.S.C. §§ 201(b)(1)(A), (B) & |
| RONALD JOSEPH TIPA, | ) | (C) and 18 U.S.C. § 2 |
| THOMAS EDWARD TAYLOR, and | ) | (Bribery of a Public Official) |
| ROSS BERNARD DEBLOIS, SR., | ) | |
| | ) | Count 3: 18 U.S.C. § 1349 |
| Defendants. | ) | (Conspiracy to Commit Honest Services |
| | ) | Fraud) |
| | ) | |
| | ) | Counts 4-8: 18 U.S.C. §§ 1343, 1346 and |
| | ) | 18 U.S.C. § 2 |
| | ) | (Honest Services Fraud) |

## SUPERSEDING INDICTMENT

March 2016 Term – At Alexandria

THE GRAND JURY CHARGES THAT:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The National Guard Bureau

1.     The Army National Guard ("ARNG") was part of the National Guard of the

United States and was divided into 54 units stationed across each of the 50 states and the U.S.

territories.  The National Guard Bureau ("NGB") was a joint activity of the U.S. Department of

Defense ("DOD"), the state ARNGs, and the Departments of the Army and Air Force.  The NGB

administered policies and oversaw federal funding for state ARNGs that affected the federal

mission of the National Guard, and acted as the official conduit between the states and the Departments of the Army and Air Force. The NGB headquarters office was located in Arlington, Virginia, within the Eastern District of Virginia.

2.     The DOD provided federal funds to the ARNG for, among other things, advertising, marketing, and sponsorships in order to recruit new members. In turn, the ARNG, acting through the NGB, provided a portion of these monies to private businesses to promote the ARNG through marketing programs. The NGB could award these contracts directly, avoiding a competitive bid process, by awarding these contracts to Small Business Administration ("SBA") 8(a) businesses ("8(a) companies"), which are businesses that qualify as minority, female, or disabled-veteran owned.

3.     The NGB also awarded indefinite delivery/indefinite quantity ("IDIQ") contracts to contractors for the provision of supplies and services to the NGB. IDIQ contracts provided for an indefinite quantity of services during a fixed period of time and were used when the NGB could not predetermine, above a specified minimum, the precise quantities of supplies or services that it required during the contract period.

Relevant Companies

4.     Military Personnel Services Corporation ("MPSC") was a contractor, located in Falls Church, Virginia, that provided professional program management, administrative, and support services to the federal government. MPSC had over 1,600 contracted employees throughout the United States and supported various programs within the DOD. In 2009, MPSC along with two other government contractors, were awarded the NGB Recruiting and Retention ("R&R") IDIQ, worth approximately $450 million, which meant that MPSC and the other

contractors were eligible to compete for recruitment and retention task orders awarded under this IDIQ.

The Defendants

5.      EDWIN STUART LIVINGSTON III ("LIVINGSTON") was a Colonel with the ARNG until in or around 2000. While in the ARNG, he served as the Chief Financial Officer of the NGB, overseeing its approximate $7.5 billion budget. After retiring from the ARNG, LIVINGSTON went to work for MPSC as the Chief Financial Officer, where he was a twenty five percent (25%) owner and a member of the MPSC Board of Directors.

6.      RONALD JOSEPH TIPA ("TIPA") was a Colonel with the ARNG until in or around 2000. While in the ARNG, he worked in the Human Resources Division and served as head of the G-1 Recruitment Division. After retiring from the ARNG, TIPA went to work for MPSC, where he was the Senior Human Resources Consultant, a twenty five percent (25%) owner, and a member of the MPSC Board of Directors.

7.      THOMAS EDWARD TAYLOR ("TAYLOR") was a Colonel with the ARNG until in or around 2002. While in the ARNG, he served as the Chief of the Recruiting and Retention Division, and later as the Chief of Director's Staff Group. After retiring from the ARNG, TAYLOR went to work for MPSC, where he was a twenty five percent (25%) owner and member of the MPSC Board of Directors.

8.      ROSS BERNARD DEBLOIS, SR. ("DEBLOIS") was a Colonel with the ARNG until in or around 2005. While in the ARNG, he replaced TIPA as head of the G-1 Recruitment Division when TIPA retired, and later became Chief of Staff of the NGB. After retiring from the ARNG, DEBLOIS went to work for MPSC where DEBLOIS was MPSC's Director of Business

3

Development from in or around 2005 until in or around 2009.  From in or around 2009 until

present, DEBLOIS was MPSC's Chief Executive Officer.

The Co-Conspirators

9.      Robert Porter ("Porter") joined the ARNG in or about 1996 and was transferred to

the NGB shortly thereafter, where he served until his retirement in the fall of 2012.  While with

the NGB, Porter was promoted to the rank of Colonel and held the position of Director of NGB's

Guard Strength Directorate ("GSD") and oversaw the contracting process for the GSD.  While at

NGB, Porter was a public official as defined in Title 18, United States Code, Sections 201(a)(1)

and (2), and could make decisions, exercise influence over, and take action concerning the

awarding of multimillion dollar contracts with companies seeking to do business with the

ARNG, and did use his official position to influence the award of multimillion dollar contracts to

companies doing business with the ARNG, including MPSC.

10.     John Jones ("Jones") was a one-star Brigadier General in the New York Army

National Guard in or about 1998.  After retiring from the New York Army National Guard, Jones

founded MPSC as an SBA 8(a) company in 1998 as a one hundred percent (100%) owner.

Later, Jones became a twenty five percent (25%) owner, along with LIVINGSTON, TIPA, and

TAYLOR, and member of the MPSC Board of Directors.

## COUNT 1
## 18 U.S.C. § 371
### (Conspiracy to Bribe a Public Official and to Defraud the United States)

THE GRAND JURY FURTHER CHARGES THAT:

11.     Paragraphs 1 through 10 of this Indictment are re-alleged as if fully set forth herein.

12.     From in or about 2010 and continuing until in or about September 2014, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, the defendants,

> EDWIN STUART LIVINGSTON III,
> RONALD JOSEPH TIPA,
> THOMAS EDWARD TAYLOR, and
> ROSS BERNARD DEBLOIS, SR.,

did knowingly, deliberately, and willfully combine, conspire, confederate, and agree, with each other, Porter, Jones, and others known and unknown, to commit certain offenses against the United States, namely:

(a) bribery of a public official, that is, for the defendants to knowingly and corruptly, directly and indirectly, give, offer, and promise things of value to a public official with intent to influence official acts and to influence such public official to commit or aid in committing, or collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States and to induce the public official to do and omit to do acts in violation of the public official's lawful duties, in violation of Title 18, United States Code, Sections 201(b)(1)(A), (B), & (C); and

(b) defrauding the United States, that is, for the defendants to impair, obstruct, and defeat the lawful functions of the National Guard Bureau, in violation of Title 18 United States Code, Section 371.

5

## PURPOSE OF THE CONSPIRACY

13.     It was the nature and purpose of the conspiracy for LIVINGSTON, TIPA, TAYLOR, DEBLOIS, Jones, and others known and unknown to the grand jury, to secure ARNG contracts for MPSC, and thereby to profit personally, by giving, offering, and promising things of value to Porter, a public official, in exchange for Porter's agreement to take official action to influence the award of NGB contracts to MPSC and, by doing so, to defeat the lawful functions of the NGB.

## MANNER AND MEANS OF THE CONSPIRACY

14.     In furtherance of this conspiracy, and to accomplish its object, the following methods and means were used, among others:

a.     LIVINGSTON, TIPA, TAYLOR, DEBLOIS, and Jones provided things of value to Porter, including cash, lunches, employment of family members, and a percentage of the dollar amount of the contracts over which Porter exercised his official influence to have awarded to MPSC.

b.     Porter performed official acts that benefitted MPSC, to wit, influencing the awarding of NGB contracts to MPSC to benefit LIVINGSTON, TIPA, TAYLOR, DEBLOIS, and Jones, in exchange for these things of value that LIVINGSTON, TIPA, TAYLOR, DEBLOIS, and Jones provided to Porter.

c.     With Porter's assistance, LIVINGSTON, TIPA, TAYLOR, DEBLOIS, and Jones corruptly obtained at least three NGB contracts for MPSC, worth a total of at least $5.5 million.

d.     In order to disguise their corrupt agreement with Porter, LIVINGSTON, TIPA, TAYLOR, DEBLOIS, and Jones agreed to, and did, disguise the corrupt payments as a

"bonus" or "incentive" that would be paid to Porter after Porter retired from the NGB and began employment with MPSC, in an attempt to conceal the true purpose of the corrupt payments.

OVERT ACTS

15.    In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts were committed within the Eastern District of Virginia and elsewhere:

a.    In or about 2010 or 2011, in the Eastern District of Virginia, LIVINGSTONG and TIPA directly offered to pay Porter one percent (1%) of the gross contract amount of any contracts that Porter steered to MPSC while Porter remained an active-duty Colonel at the NGB. As part of this corrupt agreement, the one percent would be paid to Porter only after he retired from the NGB and commenced working for MPSC, and that any such payment or payments would be concealed as an "incentive fee" or "bonus" payment in MPSC payroll records.

b.    Throughout 2011 and 2012, Porter took official actions to help steer at least three NGB marketing contracts to MPSC. These contracts were known as: (1) the Michael Jordan American Motorcycle Association ("AMA") Motorsports Program; (2) the Trademark Licensing Agency ("Trademark") Program contract; and (3) the Guard Strength Directorate's Strength Readiness Support Center ("SRSC") Services. These contracts were awarded under the NGB's R&R IDIQ and were worth at least approximately $5.5 million in total.

c.    On or about June 3, 2014, after Porter had retired from the NGB and started working at MPSC, in the Eastern District of Virginia, LIVINGSTON, TIPA, and Porter met for lunch to discuss their corrupt agreement. In that conversation, LIVINGSTON and TIPA acknowledged the corrupt agreement they had struck with Porter while Porter was an active-duty Colonel, and further, confirmed that TIPA had informed DEBLOIS about the corrupt agreement:

7

TIPA:          I think we go - I think tomorrow at the [Board of Directors] meeting, we say we made a deal on one percent for Porter, which we did. [DEBLOIS] knows we made that deal.

LIVINGSTON:      Okay. I didn't think he knew that.

TIPA:          No, he knew it. The issue is, is now just make sure this is verified and then we pay it. No, I told [DEBLOIS] we made a one percent deal.

        d.     In that same meeting on or about June 3, 2014, LIVINGSTON and TIPA confirmed that Porter provided inside pricing information to MPSC in his official capacity when MPSC was competing for contracts. Specifically, LIVINGSTON, TIPA, and Porter discussed a contract bid that Porter had advised MPSC to increase by approximately $800,000.

        e.     On or about June 25, 2014, in the Eastern District of Virginia, DEBLOIS met with Porter at MPSC's offices. In that meeting, DEBLOIS informed Porter that the owners of MPSC would discuss paying Porter the one percent bribe payment, during the upcoming July 9, 2014 MPSC Board of Directors meeting.

        f.     On or about July 9, 2014, in the Eastern District of Virginia, MPSC held its Board of Directors meeting at the MPSC offices with LIVINGSTON, TIPA, DEBLOIS, TAYLOR, and Jones present. At that meeting, LIVINGSTON, TIPA, DEBLOIS, and TAYLOR discussed the corrupt agreement with Porter, which contracts Porter had steered to MPSC, and how the one percent bribe payment would be made.

        g.     At this meeting on or about July 9, 2014, LIVINGSTON, TIPA, DEBLOIS, and TAYLOR discussed the contracts that Porter had influenced in exchange for the 1% payment of $55,000. Specifically, DEBLOIS told LIVINGSTON, TIPA, TAYLOR, and Jones:

> [Porter], now last meeting, um, um, [Porter] met with you guys and talked about the incentive of fifty-five thousand dollars for all of his influence on three contracts, and you

guys came up with no way to figure it out from there. The three contracts are AMA; that's the motorcycle, Trademark, both of them are gone now, and the SRSC and that's going away soon. Now, at the time when we got these, [Porter] was in uniform.

      h.     At the same meeting, LIVINGSTON and TIPA acknowledged their agreement to pay Porter one percent (1%) of the gross contract amount of any contracts that Porter steered to MPSC while Porter remained an active-duty Colonel at the NGB. For example, LIVINGSTON stated "we - [TIPA] and I made an agreement."

      i.     Later in the meeting, DEBLOIS explained to LIVINGSTON, TIPA, TAYLOR, and JONES what DEBLOIS had told Porter about how he would be paid if the Board of Directors voted to make the payment, stating "I - I met with [Porter] and I said, I got it [Porter] – um, if the board decides to pay you, we would probably be over a three month period."

      j.     At that same meeting, on or about July 9, 2014, the MPSC owners, LIVINGSTON, TIPA, TAYLOR, and Jones, all voted to approve the payment of the bribe payment to Porter.

      k.     On or about July 10, 2014, DEBLOIS emailed LIVINGSTON, TIPA, TAYLOR, and Jones with the subject "Board Follow-up—Close Hold" and stated "Just to follow-up to solidify the meeting points: . . . Porter – we will provide him with $55k, spread over Aug and Sep, paid prior to 30 Sep release." TAYLOR responded on or about that same day, "Agreed great recap."

      l.     On or about July 15, 2014, DEBLOIS emailed the following message to Porter,

Subject: Incentive

[Porter], The Board approved your requested $55k incentive ... to be distributed over the course of the next three months. I will send invoice to [MPSC's Director of Financial Operations] for $19,000 in Jul, $18,000 in Aug and $18,000 in Sep. Regards, rbd

Porter responded to this email and asked "will this come as a separate check?" DEBLOIS replied to Porter that "It will be processed with the payroll...if you have direct deposit, that is how it will be delivered." Porter then requested that the payment be issued separately from his regular MPSC payroll check. DEBLOIS subsequently sent an email to MPSC's Director of Financial Operations and asked, "on the incentive I sent you for [Porter]...if possible, can you cut a separate check for that rather than direct deposit? Thanks, rbd"

m.      On or about July 23, 2014, in the Eastern District of Virginia, Porter met with MPSC's Director of Financial Operations at MPSC's offices. During that meeting the MPSC's Director of Financial Operations handed Porter a check issued by MPSC in the amount of approximately $10,326.50 and advised Porter that the check amount reflected the fact that taxes had been deducted. Porter then cashed the check at an Eagle Bank in Fairfax, Virginia.

n.      On or about August 19, 2014, in the Eastern District of Virginia, MPSC's Director of Financial Operations handed Porter a check issued by MPSC in the amount of approximately $10,326.50 at MPSC's offices. Porter then cashed the check at an Eagle Bank in Fairfax, Virginia.

o.      On or about September 8, 2014, in the Eastern District of Virginia, MPSC's Director of Financial Operations emailed Porter and told Porter that Porter's "3rd installment check [was] here in the office."

p.      On or about September 10, 2014, in the Eastern District of Virginia, MPSC's Director of Financial Operations handed Porter a check issued by MPSC in the amount of approximately $10,899 at MPSC's offices. Porter then cashed the check at an Eagle Bank in Reston, Virginia.

(All in violation of Title 18, United States Code, Section 371.)

10

## COUNT 2
## 18 U.S.C. §§ 201(b)(1)(A), (B), & (C)
## (Bribery of a Public Official)

THE GRAND JURY FURTHER CHARGES THAT:

16.    Paragraphs 1 through 10 and paragraphs 13 through 15 of this Indictment are re-alleged as if fully set forth herein.

17.    From in or about July, 2014, through in or about September, 2014, in the Eastern District of Virginia and elsewhere, the defendants,

EDWIN STUART LIVINGSTON III,<br>
RONALD JOSEPH TIPA,<br>
THOMAS EDWARD TAYLOR, and<br>
ROSS BERNARD DEBLOIS, SR.,

did, directly and indirectly, corruptly give, offer, and promise a thing of value to a public official, Porter, with intent to influence an official act, influence a public official to commit and aid in committing and to collude in, and allow, and to make opportunity for the commission of a fraud on the United States, and to induce a public official to do an act and omit to do an act in violation of his official duty, that is pay Porter approximately $55,000 in exchange for Porter's help in steering NGB contracts to MPSC.

(All in violation of Title 18, United States Code, Sections 201(b)(1)(A), (B), & (C), and Title 18, United States Code, Section 2.)

## COUNT 3
## 18 U.S.C. § 1349
## (Conspiracy to Commit Honest Services Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

18.     Paragraphs 1 through 10 and paragraphs 13 through 15 of this Indictment are re-alleged as if fully set forth herein.

19.     At all times relevant to this Indictment, the citizens of the United States had an intangible right to the honest services of employees of the United States, and specifically, NGB officials.  As an officer serving the United States ARNG at the NGB under Title 10 orders, Porter owed a duty to render honest services to the United States and its citizens in NGB matters, including a duty to refrain from accepting bribes and kickbacks in matters involving their employment.

20.     From in or around 2010 and continuing to at least in or around September 2014, within the Eastern District of Virginia, the defendants,

EDWIN STUART LIVINGSTON III,
RONALD JOSEPH TIPA,
THOMAS EDWARD TAYLOR, and
ROSS BERNARD DEBLOIS, SR.,

with Porter, Jones, and others known and unknown to the grand jury did knowingly and willfully conspire, combine, confederate, and agree to commit certain offenses against the United States, that is:  to knowingly and with the intent to defraud, devise and intend to devise a scheme and artifice to deprive United States citizens, and others, of the intangible right of honest services, and in doing so to transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit: the defendants corruptly agreed to pay Porter for Porter's exercise of official action to influence the award of NGB contracts to

12

MPSC, in order to enrich the defendants, which is a violation of Porter's duty to refrain from accepting bribes and kickbacks in exchange for performing Porter's official duties, contrary to Title 18, United States Code, Sections 1346 and 1343.

(All in violation of Title 18, United States Code, Section 1349.)

## COUNTS 4-8
## 18 U.S.C. § 1343 and § 1346
## (Honest Services Fraud)

THE GRAND JURY FURTHER CHARGES THAT:

21. Paragraphs 1 through 10, paragraphs 13 through 15, and paragraph 19 of this Indictment are re-alleged as if fully set forth herein.

22. From in or around 2010 to in or around September 2014, the exact dates being unknown to the grand jury, in the Eastern District of Virginia and elsewhere, the defendants

EDWIN STUART LIVINGSTON III,
RONALD JOSEPH TIPA,
THOMAS EDWARD TAYLOR, and
ROSS BERNARD DEBLOIS, SR.,

Porter, Jones, and others, known and unknown to the grand jury, did knowingly and with the intent to defraud, devise and intend to devise and participate in a scheme and artifice to deprive the citizens of the United States of the intangible right of Porter's honest services in NGB matters.

### PURPOSE OF THE SCHEME

23. The purpose of this scheme and artifice to defraud was for LIVINGSTON, TIPA, TAYLOR, DEBLOIS, and Jones to offer, promise, and give things of value to Porter, with the intent for Porter to use and misuse his position as an NGB official to manipulate and influence the NGB's awarding of lucrative marketing and recruitment contracts.

### THE SCHEME

24. Paragraph 14 of this Indictment is re-alleged and incorporated by reference as a description of the scheme and artifice.

14

## USE OF THE WIRES

25.     On or about the dates specified as to each count below, in the Eastern District of

Virginia, and elsewhere, for the purpose of executing and attempting to execute this scheme and

artifice to defraud, defendants,

EDWIN STUART LIVINGSTON III,
RONALD JOSEPH TIPA,
THOMAS EDWARD TAYLOR, and
ROSS BERNARD DEBLOIS, SR.,

did knowingly transmit and caused to be transmitted by means of wire communications in

interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, and as

described below:

| COUNT NO. | APPROXIMATE DATE | INTERSTATE WIRE TRANSMISSION DESCRIPTION | DESCRIPTION |
|---|---|---|---|
| 4 | July 10, 2014 | Electronic signal and transfer of data from outside of Virginia to Falls Church, Virginia | In an email, TAYLOR responded "Agreed great recap" to an email from DEBLOIS where DEBLOIS emails LIVINGSTON, TIPA, TAYLOR, and Jones with the subject "Board Follow-up—Close Hold" and states "Just to follow-up to solidify the meeting points: . . . Porter – we will provide him with $55k, spread over Aug and Sep, paid prior to 30 Sep release." |

15

| COUNT NO. | APPROXIMATE DATE | INTERSTATE WIRE TRANSMISSION DESCRIPTION | DESCRIPTION |
|---|---|---|---|
| 5 | July 23, 2014 | Electronic signal and transfer of data from Fairfax, Virginia to outside of Virginia | Wire transmission occurring in connection with Porter cashing MPSC Check #5975 to Porter for $10,326.50 |
| 6 | August 19, 2014 | Electronic signal and transfer of data from Fairfax, Virginia to outside of Virginia | Wire transmission occurring in connection with Porter cashing MPSC Check #6164 to Porter for $10,326.50 |
| 7 | September 8, 2014 | Electronic signal and transfer of data that was transmitted from outside of Virginia to Falls Church, Virginia | Porter responded in an email "Will [sic] down this week. Will coordinate" to an email from MPSC accountant to Porter, telling Porter "3rd installment check is here in the office." |
| 8 | September 10, 2014 | Electronic signal and transfer of data from Reston, Virginia to outside of Virginia | Wire transmission occurring in connection with Porter cashing MPSC Check #6259 to Porter for $10,899.00 |

(All in violation of Title 18, United States Code, Sections 1343 and 1346, and Title 18, United States Code, Section 2.)

16

## FORFEITURE NOTICE

26.     Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are
notified that upon conviction of any of the offenses alleged in Counts 1-8 of this Indictment,
defendants

EDWIN STUART LIVINGSTON III,
RONALD JOSEPH TIPA,
THOMAS EDWARD TAYLOR, and
ROSS BERNARD DEBLOIS, SR.,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C),
and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes
or is derived from proceeds traceable to the counts of conviction including conspiracy to commit
bribery and to defraud the United States, in violation of Title 18, United States Code, Section
371; bribery of a public official, in violation of Title 18, United States Code, Sections
201(b)(1)(A), (B) and (C) and 2; conspiracy to commit honest services fraud, in violation of
Title 18, United States Code, Section 1349; as well as honest services fraud, in violation of Title
18, United States Code, Sections 1343, 1346 and 2.

27.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title
18, United States Code, Section 982(b)(1), and by Title 28, United States Code, Section 2461(c),
the defendants shall forfeit substitute property, if, by any act or omission of the defendants, the
forfeitable property or any portion thereof, cannot be located upon the exercise of due diligence;
has been transferred, sold to, or deposited with a third party; has been placed beyond the
jurisdiction of the Court; has been substantially diminished in value; or has been commingled
with other property which cannot be divided without difficulty.

17

REDACTED

28.    The property subject to forfeiture as assets includes all of the defendants' right,

title, and interest in the following properties:

| Owner | Property Description |
|---|---|
| EDWIN STUART LIVINGSTON III | American Funds Service Company Account #▮▮▮▮▮Money Market Account No. ▮▮ |
| RONALD JOSEPH TIPA | Real property located in the County of Talbot, Maryland, Parcel 05-196515 (21375 Ferry Landing Road, Tilghman, Maryland)<br><br>Bank of America Account #▮▮▮▮▮▮ |
| THOMAS EDWARD TAYLOR | BB&T Account #▮▮▮▮▮ |
| ROSS BERNARD DEBLOIS, SR. | BB&T Account #▮▮▮▮▮ |

(Pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461, and Title 21, United States Code, Section 853.)

DATED this ____ day of March 2016
A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
Foreperson of the Grand Jury

18

DANA J. BOENTE
United States Attorney
Eastern District of Virginia

By: _____
Jonathan L. Fahey
Assistant United States Attorney

_____
Christopher Catizone
Assistant United States Attorney


ANDREW WEISSMANN
Chief, Fraud Section
Criminal Division

By: _____
Alison L. Anderson
Trial Attorney

19